### In re MANTON'S WILL.

(Supreme Court, Appellate Division, Second Department. June 21, 1898.)

APPEAL FROM SURROGATE—PROCEDURE—JURY TRIAL.

If, upon an appeal from a surrogate's decree admitting a will to probate, the mind of the court, upon a consideration of the whole evidence de novo, is in doubt upon the question whether the will is the free and voluntary act of the testator, it becomes a question of fact for the determination of the jury; and it is the duty of the court to set aside the probate, and direct a trial of the issues, even though, upon the testimony before the court, the jury would be justified in finding that the will was his voluntary act.

Appeal from surrogate's court, Suffolk county.

In the matter of the probate of the alleged last will of Michael Manton, deceased. From a decree admitting the will to probate, certain heirs appeal. Trial of issues by jury directed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Frank M. Avery (Joseph Wood, on brief), for appellants.
Walter H. Jaycox (Timothy M. Griffing, on brief), for respondent.

WOODWARD, J. This seems to us a case in which there are questions of fact that, under the rule laid down in Re Brunor, 21 App. Div. 259, 47 N. Y. Supp. 681, should be submitted to a jury. Michael Manton, who is alleged to have executed the will under consideration, was past 90 years of age. He had never been married, and could neither read nor write. He had been very deaf for a number of years, and, at the time of making the alleged will, he was in a weak and childish condition. Near him resided his nephew and namesake, Michael Manton, 2d, who occasionally visited him, and his wife and children did errands for him from time to time. John Manton, brother of the deceased, also lived near him with his wife. Early in November, 1896, deceased was taken sick. Mrs. Michael Manton, 2d, put him to bed in his own home; and John Manton and wife moved into the house with deceased, and lived with him, taking care of him until the time of his death. There was evidence to show that John Manton had for a series of years tried to induce his brother to make a will in his behalf, and that deceased had persistently and up to within a few weeks of his death refused to do so. There was some evidence that deceased had quarreled with John Manton, and that he had said unkind things of his nephew and wife, though it seems that there was nothing calculated to establish insane delusions. There is, however, much testimony tending to establish undue influence on the part of John Manton, the principal beneficiary under the will; and it is open to serious doubt whether the paper purporting to be the last will and testament of Michael Manton is in fact the voluntary act of the deceased in distributing his estate. There were facts developed upon the trial which, in our judgment, were sufficient to warrant a finding that the paper offered for probate as the will and testament of Michael Manton did not express his free will. The fact that he had often been importuned to make a will, and that he had persistently refused to do so, the last time within two weeks of his death, taken in connection with the conduct of John Manton, the proponent, at the time of the execution of the paper, as well as at other times, raises a sufficient issue of fact to warrant this court in setting aside the decree of the surrogate, and in ordering that the question of undue influence be tried by a jury at a trial term of the supreme court to be held in the county of Suffolk.

This disposition of the case is warranted by the evidence before the surrogate's court, and by the usage as established in Re Van Houten's Will, 11 App. Div. 208, 42 N. Y. Supp. 919, and in Howland v. Taylor, 53 N. Y. 627. A trial before a jury at a trial term of the supreme court, held in the county of Suffolk, is therefore ordered, of the following questions: First. Was the instrument purporting to be the last will and testament of Michael Manton, deceased, dated the 10th day of December, 1896, freely and voluntarily made by him? Second. Was the execution by the testator of the instrument purporting to be his last will and testament, under date of December 10, 1896, procured to be executed by fraud, coercion, or undue influence practiced upon him? Costs of the appeal to abide the final award of costs. All concur.